```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------x
M & R CAPITAL MANAGEMENT, INC.,

              Plaintiff,
                                        ___Cv.___
         v.


                                         COMPLAINT
THE CURCHIN GROUP, LLC,              (Jury trial demanded)
ROBERT C. FOURATT, CPA
and RICHARD T. DIVER,

              Defendants.
-----------------------------x
```

Plaintiff M & R Capital Management, Inc. ("M & R"), by its attorneys, the Law Offices of Joseph E. Gasperetti, as and for its Complaint alleges as follows:

## I.
## Nature of the Action

1.  This action arises from the professional malpractice of the defendants The Curchin Group, LLC and its senior partner, Robert C. Fouratt, CPA.

2.  The plaintiff M & R is an investment advisory firm registered with the U.S. Securities and Exchange Commission.  Between 1993 and December 2018, the

1

defendant Mr. Richard T. Diver (the "defendant Diver")
served as M & R's Senior Vice President and Chief
Operations Officer.  The defendant Diver managed all of
M & R's revenues and expenses.  During the years 1995
to 2018, the defendants The Curchin Group and its
senior partner, Mr. Robert C. Fouratt (collectively
referred to as the "Curchin defendants"), served as
M & R's certified public accountants.  M & R relied
extensively upon the Curchin defendants for the proper
and lawful accounting of all matters relating to M &
R's expenses and revenues.

3.  On December 7, 2018, Mr. John E. Maloney ("Mr.
Maloney"), M & R's principal founder, Chairman, and
Chief Executive Officer learned that M & R's trust in
the defendant Diver and the Curchin defendants had been
sorely betrayed.

4.  On that day, the defendant Diver tearfully
confessed to Mr. Maloney in a face-to-face conversation
that, during 2017 and 2018, he had embezzled more than
$300,000.00 from M & R's clients in order to enrich

solely himself.  (Subsequent investigation revealed
that, in fact, the defendant Diver had embezzled
approximately $750,000.00 from M & R's clients.)  Later
that same week, Mr. Maloney also learned that during
the years 2011 to 2018, the defendant Diver had
embezzled millions of dollars directly from M & R by
stealing funds from M & R's bank account and diverting
those funds to himself through unauthorized and
enormous payments to himself disguised as wages.

5.   The United States Attorney's Office for the
Southern District of New York has charged the defendant
Diver with wire fraud and criminal violations of the
Investment Advisers Act of 1940.

6.   Between 2011 and 2018, the Curchin defendants
served as M & R's independent public accountants whose
duties included review and audit of M & R's financial
books and records, the preparation of annual certified
financial statements and the preparation of M & R's tax
returns.

7.   During the years 2011 to 2018, the Curchin

defendants failed to exercise the standard of care and conduct applicable to certified public accountants in the performance of their professional duties.

8.  During the years 2011 to 2018, and in breach of their professional responsibility to M & R, the Curchin defendants ignored numerous red flags which signaled the defendant Diver's larcenous activities and negligently failed to investigate and report the indicia of the defendant Diver's fraud to M & R's management.  Accordingly, the plaintiff M & R now seeks money damages to remedy the professional malpractice of the Curchin defendants.

9.  As a proximate cause of the Curchin defendants professional malpractice, M & R has suffered money damages in an amount of at least $10,000,000.00.

**II.**
**The Parties**

10.  Plaintiff M & R is a New York corporation, having its principal place of business at 88 Pine Street, New York, New York.  M & R provides investment

4

management advice to its clients for a fee.

11.   The defendant Diver is a resident of the State of New Jersey.

12.   The defendant Curchin is a limited liability company having its principal place of business in Red Bank, New Jersey.

13.   The defendant Fouratt is a citizen of the State of New Jersey.  The defendant Fouratt is, upon information and belief, Curchin's managing partner.  At all times relevant to this action, Fouratt served as the engagement partner for M & R.  During the years 2011 to 2018, Mr. Fouratt was responsible for supervising all professional services rendered by The Curchin Group to M & R.

### III.
### Jurisdiction and Venue

14.   Pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this action because the plaintiff's citizenship is diverse to all defendants and the amount in controversy exceeds

$75,000.00, exclusive of interest and costs.

15.   The Court has personal jurisdiction over the defendants because the defendants transacted business in the State, City and County of New York and committed tortious acts which caused harm to the plaintiff in the County of New York.

16.   Venue in this Court is proper because the acts and transactions complained of took place in the Southern District of New York.

## IV.
## The Facts

### A. M & R's Investment Advisory Business

17.   M & R is an investment advisory firm registered with the U.S. Securities & Exchange Commission.  As required by federal law, M & R, as a registered investment advisor, enters into written agreements with its clients.  Those agreements typically provide that M & R will manage the client's assets on a discretionary basis in consideration of an annual fee of approximately 1% of the value of the

client's assets under M & R's management.  Most of M & R's clients authorize M & R to deduct its advisory fee on a quarterly basis directly from the client's custodian account.

18.  M & R was founded in 1993 by Mr. John E. Maloney, Mr. Alan Rosenfeld and the defendant Diver. Since 1993 Mr. Maloney has served as M & R's chairman and Chief Executive Officer.  He is currently M & R's sole shareholder.  Mr. Rosenfeld retired some years ago and is no longer either a stockholder, officer or director of M & R.  Between 1993 and December 14, 2018, the defendant Diver served as M & R's Senior Vice President and Chief Operations Officer.

19.  Mr. Maloney is M & R's chief investment officer.  He and four other investment advisers manage client assets valued at approximately $503,000,000.00.

20.  The defendant Diver managed M & R's revenues and expenses.  His duties included billing M & R's clients, and paying all of M & R's expenses, including rent, healthcare and payroll.

21.   In consideration of the defendant Diver's
employment, in or about January 2011, Mr. Maloney
agreed to pay the defendant Diver a base salary of
$100,000.00.  That base salary was supposed to be
supplemented by such quarterly bonuses as, in Mr.
Maloney's judgment, the firm's financial performance
warranted.  The defendant Diver's annual compensation
during the years 2011 to 2018 was supposed to amount to
at most $350,000.

**B.   The Curchin Defendants Professional
     Malpractice**

22. In his capacity as Chief Operations Officer,
the defendant Diver worked closely with the Curchin
defendants, whom he retained in 1996 to perform
accounting services for M & R, including auditing
financial records, preparing and certifying M & R's
annual financial statements and filing M & R's tax
returns.  Notably, the Curchin defendants and the
defendant Diver developed an independent relationship.

8

In fact, the Curchin defendants prepared the defendant
Diver's personal tax returns.

23.  At all times relevant to this action, the
Curchin defendants knew that the defendant Diver was
primarily responsible for managing M & R's revenues and
expenses.  Those responsibilities included maintaining
M & R's financial records.

24.  Moreover, the Curchin defendants, in their
capacity as Certified Public Accountants, repeatedly
represented to M & R that they would plan and perform
the audits to obtain reasonable assurance about whether
the financial statements are free of material
misstatements whether from (1) errors, (2) fraudulent
financial reporting, (3) misappropriation of assets, or
(4) violation of laws or governmental regulation.

25.  In negligent violation of their professional
duties to M & R, the Curchin defendants failed to
exercise ordinary care.

26.  The Curchin defendants failed to notice,
investigate and report to M & R at least the following
red flags:

**(i) The Curchin Defendants Failed to Exercise Skepticism and Apply Heightened Scrutiny to Mr. Diver's Activities**

27.   Because the defendant Diver was solely responsible for managing all of M & R's revenues and expenses, his financial activities and internal financial journal entries and reports should have been subjected to heightened scrutiny.  No such scrutiny was ever exercised as to the defendant Diver's management of M & R's finances.  On information and belief, his false assertions as to M & R's revenues and expenses were simply accepted as actual facts by the Curchin defendants.  Consequently, Diver's payroll fraud and his over billing scheme, caused M & R to suffer money damages in excess of $10,000,000.00

**(ii)  The Curchin Defendants Ignored M & R's Payroll Records**

28.   As set forth below, the defendant Diver often paid himself as frequently as six times per month. Because the Curchin defendants did not review, let alone audit, M & R's payroll records, Curchin failed to

detect that the defendant Diver was embezzling M & R's revenues.

### (iii) The Curchin Defendants Failed to Review and Test M & R's Banking Records

29.  The Curchin defendants utterly ignored M & R's banking records.  Review and testing of those records would have revealed that Diver was illicitly funneling stolen funds to himself through payroll.

### (iv) The Curchin Defendants Failed to Disclose a Potential Tax Liability

30.  The Curchin defendants prepared the defendant Diver's personal tax returns.  On information and belief, Curchin repeatedly warned Diver that he was obliged to withhold taxes on his W-2 declared fraudulent income.  However, even though the Curchin defendants knew that the defendant Diver was violating federal law by under withholding taxes due on his income, Curchin failed to disclose to M & R that M & R could become responsible for sums due to the federal government for withholding taxes due on the money the defendant Diver's embezzled and camouflaged as wages.

In the proper exercise of their professional duties, the Curchin defendants ought to have included a footnote in M & R's financial statements disclosing that M & R had a contingent liability to the IRS for under withholding payroll taxes on the defendant Diver's income.

### (v) The Curchin Defendants Failed to Disclose to M & R That Diver Was Vastly Overcompensating Himself

31.   The Curchin defendants prepared both Mr. Maloney and the defendant Diver's tax returns.  Had the Curchin defendants exercised ordinary professional care, they would have learned that Mr. Maloney, who is M & R's Chairman and Chief Executive Officer and who, until December 2018, was M & R's 91% shareholder earned less money than the defendant Diver, who was obviously subordinate to Mr. Maloney.  The Curchin defendants ignored this red flag and failed to report to M & R that the defendant Diver was looting M & R by over compensating himself.

**(vi) the Curchin Defendants Failed to Investigate and Monitor M & R's Client Billings**

32.   At all times relevant to these proceedings, the Curchin defendants knew that M & R's annual revenues were entirely derived from fees paid to M & R by its clients.  The Curchin defendants also knew that the defendant Diver was solely responsible for billing investment advisory fees to M & R's clients.  In violation of their professional duties as certified public accountants, the Curchin defendants did not adequately test, audit or review the defendant Diver's billing activities.  Instead, the Curchin defendants relied entirely upon the manual entries which the defendant Diver himself made in M & R's books and records as to investment advisory fees M & R billed and received from its Clients.  Had the Curchin defendants tested the defendant Diver's manual entries against actual billing revenues received from M & R's clients, they would have discovered that the defendant Diver was stealing from M & R's clients by over charging those clients.  That is, scrutiny of the revenues actually

13

received by M & R from client billings would have
revealed that the defendant Diver was billing and
collecting client fees both outside the normal
quarterly billing cycle and in amounts far in excess of
those permitted by M & R's agreements with its clients.
For example, the Curchin defendants, in the exercise of
ordinary diligence, would have discovered that the
defendant Diver billed numerous clients as often as six
or seven times per year.  Diver's over billing scheme
permitted him to steal $748,197.00 during the years
2017 and 2018 from M & R's clients.  The defendant
Diver misappropriated these funds by paying them to
himself in the form of fraudulent wages.

**(vii) The Curchin Defendants Disregarded an
Important Red Flag Raised by Their Own Auditor**

33.   The Curchin defendants actually ignored a red
flag raised by one of their own auditors.  In March
2018, a Curchin auditor discovered that the sums
recorded by the defendant Diver on M & R's QuickBooks
general ledger were substantially and materially more
than the sums reported to Curchin from M & R's

automated client billing software as M & R's billings.
Although that auditor asked the defendant Diver about
that discrepancy, the Curchin defendants ignored their
own auditor's inquiries, and certified the audit
without obtaining an answer to their own auditor's
question.  If the Curchin defendants had analyzed this
issue adequately according to the standards of their
profession, they would have discovered Diver's fraud.

**(viii) The Curchin Defendants Failed to Test
Numerous Suspicious Bulk Entries**

34.  The Curchin defendants ignored and failed to
review the defendant Diver's numerous manual bulk
entries in M & R's internal QuickBooks bookkeeping
system.  Therefore, by virtue of their gross
inattention and malpractice, the Curchin defendants
failed to discover and report to M & R that the
defendant Diver was intentionally concealing his
misappropriation of M & R and client revenues by
aggregating numerous over-payments by clients to M & R
into single bulk entries and assigning fictitious
invoice numbers to those payments.

35.   In addition to the red flags of fraud which the Curchin defendants ignored, they committed other acts of professional malpractice.  Namely:

36.   The Curchin defendants allowed the defendant Diver to sign M & R's tax returns as "President/COO" of M & R, even though the Curchin defendants knew that the defendant Diver was not, and had never been, the President of M & R.

37.   The Curchin defendants failed to design and implement audit procedures that were appropriate for M & R, which is an SEC Registered Investment Adviser.

38.   The Curchin defendants did not exercise independent judgment and vigilance with respect to M & R.

**B. The Curchin Defendants Continuously Represented M & R**

39.   The defendant Divers fraud was not discovered until December 2018.

40.   The full scope of the defendant Diver's larceny and fraud was not uncovered until the end of the first quarter of 2019.

16

41.  During the years 2011 to 2018, the plaintiff M & R trusted and relied continuously upon the Curchin defendants professional ability and expertise and their close working relationship with Mr. Diver and M & R's staff.

42.  During the years 2011 to 2018, and for many years before that time, the Curchin defendants continuously and exclusively rendered professional accounting services to M & R.

### C.  Diver Embezzled Funds From M & R and its Clients

43.  On the morning of December 7, 2018, the defendant Diver confessed to Mr. Maloney that he, the defendant Diver, had embezzled funds from M & R's clients by engaging in an over billing scheme.

44.  Subsequent investigation revealed that the sums embezzled by the defendant Diver from M & R's clients, during the years 2017 and 2018, amounted to $748,197.00.

45.  In December 2018, the defendant Diver also

confessed to Mr. Maloney that, commencing in 2011 and
continuing until December 2018, the defendant Diver had
embezzled nearly five million dollars from M & R by
fraudulently and without authority directing M & R's
outside payroll service, PayChex, to issue to him
numerous vastly inflated salary and bonus checks.  For
example, in the year 2017, the defendant Diver paid
himself $968,219.46 by instructing PayChex to deposit
to his personal bank account more than 60 payroll
payments.

### D. The Means and Artifices of Defendant Diver's Fraud

### 1. Diver's Payroll Fraud

46.  Diver concealed his payroll fraud from M & R
and Mr. Maloney.  Diver managed all of M & R's business
expenses, including its payroll.  Diver contracted with
an outside payroll service called PayChex, which in
turn issued payroll checks to M & R's employees,
including the defendant Diver.  Investigation to date
has revealed that the defendant Diver frequently
verbally instructed PayChex to make grossly inflated

payroll payments to his personal checking account.  He
did so as often as six or seven times per month.

47.  Table A below sets forth the dollar amounts
of funds which Diver intentionally misappropriated from
M & R's payroll in order to profit solely himself:

Table A

| Year | W-2 amount ($'s) Diver received | Maximum amount the defendant Diver could have been paid ($'s) | Amount the defendant Diver stole from M & R ($'s) | Amount Mr. Maloney was Paid ($'s) |
|---|---|---|---|---|
| 2011 | 812,333.29 | 350,000.00 | **462,333.29** | 750,000.00 |
| 2012 | 796,333.29 | 350,000.00 | **446,333.29** | 750,000.00 |
| 2013 | 786,333.29 | 350,000.00 | **436,333.29** | 750,000.00 |
| 2014 | 914,366.68 | 350,000.00 | **564,366.68** | 625,408.92 |
| 2015 | 1,022,488.91 | 350,000.00 | **672,488.91** | 574,408.92 |
| 2016 | 993,119.46 | 350,000.00 | **643,119.46** | 748,408.92 |
| 2017 | 968,219.46 | 350,000.00 | **618,219.46** | 528,276.33 |
| 2018 | 1,250,645.86 | 241,666.63 | **1,008.979.33** | 590,174.10 |
| **TOTAL** | **7,543,838.24** | **2,241,666.63** | **4,852,173.61** | **5,316,677.19** |

2.  **The defendant Diver's over billing scheme**

48.  The defendant Diver defrauded about 235 of M & R's

clients in the following manner:

(A) In the ordinary course of M & R's business, the defendant Diver discharged his duty to bill and collect M & R investment advisory fees by directing his clerical assistant to access at the beginning of each calendar quarter the client's account at, for example, Schwab, and transferring that quarterly advisory fee to a fee account maintained at Schwab.

(B) Diver's assistant calculated the fees due each quarter by using software called "Black Diamond" licensed from a firm called Advent.  That software is electronically linked directly to the client accounts at Schwab and Pershing and automatically calculates the dollar amount of the fee due M & R from virtually all its clients for each calendar quarter.

(C) During the years 2017 and 2018, the defendant Diver often departed from this practice by billing off the normal quarterly cycle and instructing his assistant to bill clients in amounts calculated from the Black Diamond software on that off-cycle date.  Investigation to date has revealed that the defendant Diver over billed some 235

20

clients in this fashion by billing those clients off-cycle. That is, in addition to the ordinary authorized quarterly bills numerous clients were billed for fifth and sometimes sixth quarterly 'installments.'

49.   The defendant Diver diverted the over billed amounts from M & R's fee accounts at Schwab and Pershing directly to M & R's bank account.  The defendant Diver would then instruct PayChex to pay him that illicitly diverted sum of money through M & R payroll checks.

50.   A forensic investigation reveals that, during the years 2017 and 2018, the defendant Diver misappropriated client funds through over billing in the amount of $748,197.00. (This amount includes improper billings, billing made off-cycle, refunds withheld, and interest.)

51.   M & R voluntarily has made full restitution of the over billed amounts, including interest, to each of the over billed clients.  In the aggregate, M & R has refunded $748,197.00 to the affected clients.

52.   Upon the discovery of the defendant Diver's fraud, M & R promptly self-reported the defendant Diver's malfeasance and embezzlement to the SEC.

21

53.   The SEC in turn referred the matter to the United States Attorney's Office for the Southern District of New York.

54.   On March 28, 2019, the defendant Diver was arrested on a criminal complaint charging wire fraud and criminal violations of the Investment Advisers Act of 1940.  *United States v. Richard Diver*, 19 Mj. 3058 (UA).  That same day the SEC commenced an action against the defendant Diver alleging violations of the Investment Advisers Act of 1940.  *Securities and Exchange Commission v. Richard T. Diver*, No. 19 Civ. 2771 (LAP).  Both those actions are pending before this Court.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT THE CURCHIN DEFENDANTS
### (Professional Malpractice)

55.   Plaintiff M & R repeats and re-alleges the allegations of paragraphs 1 to 54 above with the same force and effect as if set forth at length herein.

56.   During the years 1996 to March 2018, the Curchin Group and its senior partner, the defendant Fouratt, served as M & R's independent Certified Public Accountants.  In each of the years 2011 to 2017, the Curchin defendants audited M & R's financial

22

statements and opined in writing to M & R that its financial statements presented fairly, in "all material respects," the financial position of M & R as of the close of each of those calendar years.

57.    The Curchin Group was required to perform its work in accordance with Generally Accepted Auditing Standards ("GAAS") to determine whether the financial statements of M & R were prepared in accordance with Generally Acceptable Accounting Principles ("GAAP").

58.    Compliance with GAAS requires that the auditor plan and perform each audit in a manner that provides reasonable assurance that the financial statements are free of material misstatement, whether caused by error or fraud.

59.    GAAS further requires that an auditor exercise due professional care in performing the audit and preparing the report.  Due professional care requires that an auditor exercise professional skepticism.

60.    Moreover, the Curchin defendants owed an affirmative duty to identify and inform Plaintiff M & R of any fraud red flags, such as suspicions activities or internal control deficiencies.

61. The Curchin defendants failed to exercise independence and due professional care.  As set forth more fully above, the Curchin defendants failed to notice, investigate or report to M & R the following:

>    (A) The defendant Diver stole millions of dollars from M & R by issuing to himself camouflaged payroll payments far in excess of his salary.  For example, in the year 2017, Diver caused himself to be issued more that 60 payroll payments, sometimes as often as six times per month;

>    (B) The defendant Diver's consistently earned more money than Mr. Maloney, M & R's Chairman, Chief Executive Officer and 91% shareholder.  The Curchin defendants never brought this fraud red flag to Mr. Maloney's attention;

>    (C) Even though the Curchin defendants knew that all of M & R's revenues were derived from fees paid by M & R's clients on a quarterly basis, Curchin did not report to M & R that client revenues were received on an off-cycle basis throughout the year 2017;

24

(D) Curchin failed to adequately audit and test M & R's original billing records.  Such an audit would have revealed that the defendant Diver was over billing M & R's clients.

(E) In March 2018, the Curchin defendants failed to investigate after one of their own auditors noticed a material difference between amounts recorded by the defendant Diver as client fees and the amount as calculated by M & R's billing software.

(F) The Curchin defendants did not test the defendant Diver's manual revenue and payroll entries against M & R's banking records.

62.  The Curchin defendants professional negligence proximately caused M & R to suffer money damages by failing to cause M & R to discover and stop the defendant Diver's misconduct and malfeasance.

63.   All of M & R's losses were reasonably foreseeable at the time the Curchin defendants were retained to provide accounting services.

64.  As a result of the Curchin defendants' professional

malpractice, Plaintiff M & R has suffered, and continues to suffer damages in an amount to be established at trial, but in no event less than $10 million, plus interest and attorneys fees, all of which continue to accrue.

### SECOND CLAIM FOR RELIEF AGAINST THE CURCHIN DEFENDANTS
### (*Respondeat Superior*)

65.  Plaintiff M & R repeats and re-alleges the allegations of paragraphs 1 to 64 above with the same force and effect as if set forth at length herein.

66.  To the extent that the wrongful acts set forth above were those of the defendant Fouratt, and or any other agent of The Curchin Group, LLC, those acts were performed within the scope of their employment with and for the benefit of The Curchin Group, LLC.

67. All such acts were and are imputable to The Curchin Group, LLC, and were conducted with the actual and apparent authority of The Curchin Group, LLC.

68.  Based on the foregoing, defendant The Curchin Group, LLC is liable for the conduct of its senior partner and its agents, all in an amount to be established at trial but which

shall not be less than $10,000,000.00, plus interest and reasonable attorneys fees.

### THIRD CLAIM FOR RELIEF AGAINST THE DEFENDANT DIVER
### (FRAUD)

69.   Plaintiff M & R repeats and re-alleges the allegations of paragraphs 1 to 68 above with the same force and effect as if set forth at length herein.

70.   At all times relevant to this action, the defendant Diver served as plaintiff M & R's Senior Vice President and Chief Operations Officer.

71.   Between January 2011 and December 2018, when he confessed his fraud, the defendant Diver misrepresented the following material facts to M & R and Mr. Maloney:

> (A) Diver repeatedly and on at least a quarterly basis both in face-to-face meetings and through fraudulent and false quarterly profit & loss statements, told Mr. Maloney that Diver was receiving a base salary of $100,000.00, as supplemented by the quarterly bonuses which Mr. Maloney awarded to the defendant Diver. Diver's statements were intentionally false and fraudulent when made in that Diver at all times knew,

27

but did not disclose to Mr. Maloney, that the defendant
Diver was diverting large sums of money from M & R to
his personal bank account through unauthorized payroll
distributions.  As set forth in Table A above, those
payments amounted to more than 4.8 million dollars.
(B) In the years 2017 and 2018, the defendant Diver
repeatedly advised M & R and Mr. Maloney that M & R's
revenues were lawfully derived from fees billed to M &
R's clients in accordance with both federal law and M &
R's billing regime.  Those statements were false and
fraudulent when made in that Diver knew, but did not
disclose to Mr. Maloney, until December 2018, that
Diver, in violation of the federal securities laws, and
M & R's internal procedures, was embezzling client
funds by over billing M & R's clients.

72.  M & R and Mr. Maloney reasonably and justifiably relied
upon the defendant Diver's misrepresentations.

73. As a direct and proximate cause of the fraudulent
misrepresentations made by the defendant Diver, Plaintiff M & R
has been damaged in the amount of at least $10,000,000.00.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT DIVER
#### (Breach of Fiduciary Duty)

74. Plaintiff M & R repeats and re-alleges the allegations of paragraphs 1 to 73 above with the same force and effect as if set forth at length herein.

75. As a Senior Vice President of plaintiff M & R, defendant Diver owed plaintiff M & R a duty of the utmost good faith and loyalty.  In breach of that duty, the defendant Diver, while a senior officer of M & R, engaged in a fraudulent embezzlement scheme.  Defendant diverted funds to himself which rightfully belonged to M & R and its clients.  As a result of the breach of fiduciary duty defendant owed to plaintiff, plaintiff has been damaged in an amount to be determined at trial, but in no event less than $10,000,000.00.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT DIVER
#### (Unjust Enrichment)

76.   Plaintiff M & R repeats and re-alleges the allegations of paragraphs 1 to 75 above with the same force and effect as if set forth at length herein.

77.   The defendant Diver has been unjustly enriched by his

29

improper and unauthorized retention of the funds embezzled from M & R and its clients.

78.   As a result, the defendant Diver is liable to M & R in an amount to be determined at trial but presently believed to be no less than $10,000,000.00.

WHEREFORE, plaintiff M & R Capital Management, Inc. demands judgment against the defendants Richard T. Diver, The Curchin Group, LLC and the defendant Robert C. Fouratt, CPA in an amount to be established at trial, but which shall not be less than ten million dollars ($10,000,000.00) plus, interest and attorneys fees and for such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
       May 23, 2019

```
                    Law Offices of
                    Joseph E. Gasperetti, P.C.

                    By /s/Joseph E. Gasperetti
                    Joseph E. Gasperetti (JG-2120)
                      Attorneys for Plaintiff
                      M & R Capital Management, Inc.
                    2300 Fifth Avenue
                    Rm. 12D
                    New York, New York 10037
                    (917)796-5958
                    jgasperetti@litlawpc.com
```

30